United States District Court
Southern District of Texas
**ENTERED**
April 19, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JAMARQUIS ETHERIDGE, § | |
| § | |
| Plaintiff. § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:21-cv-03002 |
| § | |
| AT&T, INC., et al., § | |
| § | |
| Defendants. § | |

## MEMORANDUM AND RECOMMENDATION

Before me is Defendants' Motion to Compel Arbitration. *See* Dkt. 11. After carefully reviewing the motion, the parties' briefing, and the applicable law, I recommend that the Motion to Compel Arbitration be **GRANTED** and this case be dismissed.

## BACKGROUND

In September 2009, Plaintiff Jamarquis Etheridge ("Etheridge") opened an account with AT&T, Inc. and AT&T Mobility, LLC (collectively, "AT&T") for wireless telephone service. When he did so, he executed a Wireless Service Agreement ("Wireless Agreement"), which incorporates AT&T's Terms of Service Agreement ("Terms of Service"). *See* Dkt. 11-2 at 4. Directly above the Wireless Agreement's signature block[1] is the following information in bolded letters:

> **I HAVE READ AND AGREE TO BE BOUND BY THIS AGREEMENT WITH ITS SEPARATE TERMS OF SERVICE, RATE PLAN AND FEATURES BROCHURES (including but not limited to, their Changes to Terms and Rates, Limitations of Liability, and Arbitration clauses).**

*Id.*

---

[1] Etheridge signed the Wireless Agreement electronically on September 9, 2009, and his signature was recorded on AT&T's signature-capture device. *See* Dkt. 11-1 at 3; Dkt. 11-4 at 2.

1

The 20-page Terms of Service contains an arbitration provision that provides, in part:

> **In the unlikely event that AT&T's customer service department is unable to resolve a complaint you may have to your satisfaction (or if AT&T has not been able to resolve a dispute it has with you after attempting to do so informally), we each agree to resolve those disputes through binding arbitration or small claims court instead of in courts of general jurisdiction.**
>
> ...
>
> **ARBITRATION AGREEMENT**
> (1) AT&T and you agree to arbitrate **all disputes and claims** between us. This agreement to arbitrate is intended to be broadly interpreted. It includes, but is not limited to:
>
> - Claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory.

Dkt. 11-3 at 17–18. The arbitration provision further provides that the American Arbitration Association ("AAA") Commercial Arbitration Rules will govern the arbitration proceedings. *See id.* at 19.

In his Complaint, Etheridge alleges that "[o]n or about September 10, 2020, AT&T improperly allowed wrongdoers access to [his] wireless account . . . without his authorization." Dkt. 1 at 1. "[A]s a result of AT&T's failure to provide reasonable and appropriate security to prevent unauthorized access to [his] wireless account," Etheridge claims that hackers "were able to change [his] password on one of his cryptocurrency accounts" and remove 159.8 Ethereum Tokens—at the moment, worth a little over $500,000. *Id.* at 6.

Based on these allegations, Etheridge asserts six causes of action against AT&T: (1) violation of the Federal Communications Act; (2) breach of contract; (3) negligence; (4) violation of the Texas Deceptive Trade Practices Act; (5) negligent hiring, retention, and supervision; and (6) negligent infliction of emotional distress. *See id.* at 10–15.

AT&T has moved to compel arbitration of Etheridge's claims.

## LEGAL STANDARD

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed . . . to submit." *AT&T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (quotation omitted). In deciding a motion to compel arbitration, district courts engage in a two-step inquiry. I must first ascertain whether the parties agreed to arbitrate the dispute. *See Polyflow, LLC v. Specialty RTP, LLC*, 993 F.3d 295, 302 (5th Cir. 2021). This "question involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.* (quotation omitted). If I find that the parties agreed to arbitrate the claims at issue, I must then determine "whether any federal statute or policy renders the claims nonarbitrable." *Id.* (quotation omitted).

It is worth noting that the Federal Arbitration Act ("FAA") "expresses a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004) (quotation omitted). The FAA "leaves no place" for the court to exercise discretion. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). As a result, I must order the parties to arbitrate issues covered by a valid arbitration agreement. *See id.*

## ANALYSIS

### A. THE PARTIES AGREED TO ARBITRATE THEIR DISPUTE

There is no disagreement that the arbitration provision at issue encompasses this dispute. The only question is whether that arbitration clause is enforceable. Etheridge argues the arbitration provision is unenforceable because: (1) he never read the arbitration provision until after filing this lawsuit; (2) it is "procedurally unconscionable" because (i) the parties had "unequal bargaining power," (ii) the "arbitration provision . . . was a surprise," and (iii) the Service

Agreement "failed to attach the applicable AAA Commercial Arbitration Rules"; and (3) it is "substantively unconscionable" because the arbitration provision "was not within [his] reasonable contemplation." Dkt. 12 at 3–5. I will tackle each argument in turn.

### 1. *Failure to Read the Arbitration Agreement*

Etheridge's first argument is that the arbitration provision is unenforceable because he did not read it. He makes this claim even though the Wireless Agreement he signed in September 2009 expressly states that (1) he had been presented a copy of the Terms of Service, which included a five-page, detailed arbitration agreement; and (2) he agreed to be bound by the Terms of Service, including the arbitration provision. *See* Dkt. 11-2 at 4; Dkt. 11-3. Needless to say, Etheridge's argument is unpersuasive.

"A person who signs a contract must be held to have known what words were used in the contract and to have known their meaning, and he must be held to have known and fully comprehended the legal effect of the contract." *Delfingen US-Tex., L.P. v. Valenzuela*, 407 S.W.3d 791, 801 (Tex. App.—El Paso 2013, no pet.) (collecting cases). Absent proof of mental incapacity, a person who signs a contract is presumed to have read and understood the contract unless he was prevented from doing so by trick or artifice. *See In re Bank of Am., N.A.*, 278 S.W.3d 342, 344 (Tex. 2009); *In re Bank One, N.A.*, 216 S.W.3d 825, 826 (Tex. 2007).

In the arbitration context, it is well-settled under Texas law that "a party's failure to read an arbitration agreement does not excuse him from arbitration." *Gilliam v. Glob. Leak Detection U.S.A., Inc.*, 141 F. Supp. 2d 734, 737 (S.D. Tex. 2001). On multiple occasions, the Texas Supreme Court has considered and rejected the identical argument Etheridge raises here. In *Cantella & Co. v. Goodwin*, the City of Lufkin sought to avoid arbitration, arguing that it did not agree to arbitrate because the assistant city manager who signed a contract "did not know about the arbitration provision." 924 S.W.2d 943, 944 (Tex. 1996). The Texas Supreme Court dismissed this line of reasoning: "Because of the document's

nature, combined with the legal presumption that a party who signs a contract knows its contents, we reject the City's argument that it did not agree to arbitrate because it did not see the arbitration provision." *Id*. Similarly, in *EZ Pawn Corp. v. Mancias*, the Texas Supreme Court considered an argument that an arbitration agreement should not be enforced because the plaintiff, Roel Gonzalez ("Gonzalez"), "never actually read it and therefore, did not understand its effect." 934 S.W.2d 87, 90 (Tex. 1996). Rejecting that argument, the Texas Supreme Court held: "Gonzalez' failure to read the agreement does not excuse him from arbitration. We presume a party, like Gonzalez, who has the opportunity to read an arbitration agreement and signs it, knows its contents." *Id*. Because signatories to a written contract have an obligation to read what they sign, Etheridge's alleged ignorance of the Terms of Service does not relieve him from complying with the terms of the arbitration provision.

### 2. *Unconscionability*

Next, Etheridge contends that the arbitration clause is unenforceable because it is unconscionable. Under Texas law, "[u]nconscionability includes two aspects: (1) procedural unconscionability, which refers to the circumstances surrounding the adoption of the arbitration provision, and (2) substantive unconscionability, which refers to the fairness of the arbitration provision itself." *In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002). "[C]ourts *may* consider both procedural and substantive unconscionability of an arbitration clause in evaluating the validity of an arbitration provision." *Id*. at 572 (emphasis added).

Because arbitration is a favored method of dispute resolution, the Texas Supreme Court has cautioned that courts "should be wary of setting the bar for holding arbitration clauses unconscionable too low as that would undermine the liberal federal policy favoring arbitration agreements." *Venture Cotton Co-op v. Freeman*, 435 S.W.3d 222, 232 (Tex. 2014) (quotation omitted). Thus, a party opposing arbitration on the grounds of unconscionability bears the heavy burden of proving this defense. *See id*.

### i. Procedural Unconscionability

The procedural aspect of unconscionability "is concerned with assent and focuses on the facts surrounding the bargaining process." *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 499 (Tex. 1991 Unequal bargaining power alone "does not establish grounds for defeating an agreement to arbitrate under the FAA." *EZ Pawn*, 934 S.W.2d at 90–91. *See also In re Palm Harbor Homes*, 195 S.W.3d 672, 679 (Tex. 2006) ("The principles of [procedural] unconscionability do not negate a bargain because one party to the agreement may have been in a less advantageous bargaining position."). Rather, "[u]nconscionability principles are applied to prevent unfair surprise or oppression." *In re Palm Harbor Homes*, 195 S.W.3d at 679. *See also Freeman*, 435 S.W.3d at 228 (describing an unconscionable contract as one that "no man in his senses and not under delusion would make" (quotation omitted)).

Citing out-of-circuit cases, Etheridge avers that the agreement to arbitrate is procedurally unconscionable because "it was a surprise" to him. Dkt. 12 at 5–6. This is nothing more than a creative attempt to argue that the arbitration agreement should not be enforced because Etheridge failed to read it. As already discussed, this argument is a non-starter. Etheridge could have—and should have—read the arbitration agreement before agreeing to its terms. Failure to read the terms of an agreement is insufficient to establish procedural unconscionability, as it does not demonstrate that some form of oppression or unfairness tainted the negotiation process.

Lastly, courts have repeatedly rejected Etheridge's argument that the "arbitration provision is procedurally unconscionable because [AT&T] failed to attach the applicable AAA Commercial Arbitration Rules." Dkt. 12 at 5. *See, e.g.*, *Edwards v. Doordash, Inc.*, No. CV H-16-2255, 2016 WL 7852532, at *7 (S.D. Tex. Dec. 8, 2016), *aff'd*, 888 F.3d 738 (5th Cir. 2018) (relying on Texas law: "failure to attach the AAA rules will not support a finding of procedural unconscionability on its own without other elements of procedural unconscionability"); *U.S. ex rel.*

*Cassaday v. KBR, Inc.*, 590 F. Supp. 2d 850, 855 n.9 (S.D. Tex. 2008) (relying on Texas law: "to the extent [plaintiff] argues the arbitration provision is unconscionable because KBR did not give him a copy of the KBR Dispute Resolution Program rules . . . the Court finds this argument is unavailing and without merit"); *In re Dec. Nine Co.*, 225 S.W.3d 693, 701–02 (Tex. App.—El Paso 2006, no pet.) (same). *Accord Raymond James & Assocs. v. Bowman*, 196 S.W.3d 311, 320 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (finding arbitration provision located in an incorporated document bound account holders even though they never received a copy).

In sum, there is no evidence that the process through which Etheridge entered into the agreement with AT&T was unfair or oppressive. That is, no evidence suggests that deception or other unethical business practices influenced Etheridge's decision to enter into the agreement. Rather, "[Etheridge] had the choice of wireless service providers, but chose to contract with [AT&T] despite the arbitration agreement contained in its Terms of Service." *Johnson v. AT&T Mobility, L.L.C.*, No. 4:09-CV-4104, 2010 WL 5342825, at *4 (S.D. Tex. Dec. 21, 2010).

### ii. Substantive Unconscionability

"[S]ubstantive unconscionability . . . refers to the fairness of the arbitration provision itself." *In re Halliburton*, 80 S.W.3d at 571. "A contract is substantively unconscionable where its inequity shocks the conscience." *Muzquiz v. Para Todos, Inc.*, 624 S.W.3d 263, 276 (Tex. App.—El Paso 2021, pet. filed). *See also Delfingen*, 407 S.W.3d at 798 ("The grounds for substantive abuse must be sufficiently shocking or gross to compel the court to intercede."). Etheridge's only argument concerning substantive unconscionability—that arbitration was not within his "reasonable contemplation"—falls well short of this onerous standard. Dkt. 12 at 5. I thus reject Etheridge's attempt to invalidate the arbitration agreement based on substantive unconscionability.

**B.     NO FEDERAL STATUTE OR POLICY RENDERS ETHERIDGE'S CLAIMS NONARBITRABLE**

Having determined that the parties agreed to arbitrate the claims at issue, I must now determine "whether any federal statute or policy renders the claims nonarbitrable." *Polyflow, LLC*, 993 F.3d at 302. This is easy. There is no statute or policy that remotely suggests that I should disregard the unambiguous language in the parties' agreement calling for arbitration. Therefore, the arbitration clause will be respected.

***

Although AT&T simply asks that I stay this case pending the outcome of the arbitration, I think the better course is to dismiss the case without prejudice and allow the parties to proceed with the arbitration. This is consistent with Fifth Circuit precedent, which leaves the decision on whether to stay or dismiss a case when compelling arbitration to the broad discretion of the district court. *See Adam Techs. Int'l S.A. de C.V. v. Sutherland Glob. Servs., Inc.*, 729 F.3d 443, 447 n.1 (5th Cir. 2013) ("Although Section 3 of the Federal Arbitration Act directs district courts to stay pending arbitration, we are bound by our precedent which states that dismissal is appropriate 'when *all* of the issues raised in the district court must be submitted to arbitration.'" (quoting *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992))).

## CONCLUSION

For the reasons identified above, I recommend the Court **GRANT** the Motion to Compel Arbitration (Dkt. 11) and **DISMISS** the case without prejudice to refiling.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have 14 days from the receipt to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an

aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this 19th day of April 2022.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE